OF

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 NOV 13  AM 11: 20

CLERK _B.W.H._
SO. DIST. OF GA.

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| OGEECHEE-CANOOCHEE RIVERKEEPER, INC.; | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| U.S. ARMY CORPS OF ENGINEERS; LT. GENERAL CARL A. STROCK, U.S. Army Corps of Engineers; COLONEL MARK S. HELD, U.S. Army Corps of Engineers, Savannah District; MIRIAN MAGWOOD, U.S. Army Corps of Engineers, Savannah District; and CYPRESS LAKE, INC; | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No. **CV606-102**

## COMPLAINT

Plaintiff Ogeechee-Canoochee Riverkeeper, Inc., by and through its undersigned counsel of record, files this Complaint.  In compliance with Local Rule 3.2, the Certificate of Interested Parties is attached hereto as Exhibit 1.

## NATURE OF ACTION

1.      This action seeks declaratory and injunctive relief for violations of federal law by the U.S. Army Corps of Engineers in authorizing Cypress Lake, Inc. to harvest approximately 60 acres of timber from a lake located in Bulloch County, Georgia.  The Corps violated its mandatory duties under the Clean Water Act ("CWA"), 33 U.S.C. § 1251, *et seq*., by concluding that certain timber harvest activities were exempt from federal jurisdiction under the CWA.  The action also seeks declaratory and injunctive relief for the Corps' violation of federal law in failing to assert jurisdiction over the same timber harvest activities under the recapture provision of the CWA.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal

question), 28 U.S.C. § 1361, 28 U.S.C. § 2201 and 2202 (declaratory judgment), and the

Administrative Procedure Act, 5 U.S.C. §§ 701-706.

3.      The violations of law alleged herein have occurred within the Southern District of

Georgia.  Venue is proper in this Court and in the Statesboro Division of the Court pursuant to

28 U.S.C. § 1391, 5 U.S.C. § 703 and S.D. Ga. Local Rule 2.1.

## PARTIES AND STANDING

### Plaintiff

4.      Plaintiff Ogeechee-Canoochee Riverkeeper ("OCRK") is a non-profit corporation

organized and existing under the laws of Georgia, with its main office in Statesboro, Georgia.

OCRK was founded in 2005 as a result of the merger of two other organizations, Canoochee

Riverkeeper and Friends of the Ogeechee River, and has approximately 400 members that live,

boat, fish, swim and recreate in the waters of the Ogeechee River, the Canoochee River and their

tributaries.

5.      OCRK has members who reside near, use, and enjoy the waters of Cypress Lake,

the adjacent habitat, and dependent aquatic life and wildlife that will be affected by the

Defendants' decisions challenged in this action.  OCRK and its members' interests in Cypress

Lake, Lotts Creek, and the Canoochee River will be directly and irreparably injured by the

degradation of these areas as authorized by the decisions of Defendants challenged in this action.

6.      OCRK and its members have an interest in seeing the dictates and procedures of

the CWA upheld and followed so that the organization and its members can enjoy and exercise

their informational and procedural rights, including the right to educate themselves and the

public about environmental concerns and policy issues affecting the Ogeechee and Canoochee Rivers, as well as their right to have federal environmental decisions carried out in accordance with the evaluative and notice requirements of applicable law and regulation.

7.     Defendants' actions have caused ongoing and threatened injury to the concrete and particularized interests of OCRK and its members, and the relief requested from this Court would redress that injury.  This controversy is ripe for adjudication and OCRK's injuries fall within the zones of interest protected by the CWA and the APA.  The interests OCRK seeks to protect by filing this suit are germane to its organizational purpose, and neither the claims asserted nor the relief requested by OCRK in this suit require the participation of its individual members.

8.     OCRK previously corresponded with Defendants to apprise them of the same issues and concerns that give rise to this lawsuit.

### Defendants

9.     Defendant United States Army Corps of Engineers ("the Corps") is an agency of the federal government that has the duty of evaluating applications for permits under Section 404 of the CWA and ensuring that the requirements of that Section are fulfilled.

10.     Defendant Lt. General Carl A. Strock is the Commander and Chief of Engineers for the Corps and is the official responsible for actions taken by the Corps.  Lt. General Strock is sued in his official capacity.

11.     Defendant Col. Mark S. Held is the Commander of the Savannah District of the Corps and is the official responsible for actions taken by the Corps in that district.  Col. Held is sued in his official capacity.

12.     Defendant Mirian Magwood is the Chief of the Regulatory Division for the Savannah District of the Corps and signed the Corps decision at issue in this litigation.  Ms. Magwood is sued in her official capacity.

13.     Defendant Cypress Lake, Inc. ("CLI") is a for-profit corporation organized under the laws of Georgia and is based in Statesboro, Georgia.  Through an agent, CLI sought and obtained authorization to harvest timber and discharge fill material in Cypress Lake.  CLI is joined in this action as a defendant pursuant to Rules 19(a) and 20(a) of the Federal Rules of Civil Procedure, as a party whose joinder will not deprive the court of jurisdiction and as a party that claims an interest in the challenged Corps decision.  CLI is situated such that disposition of this action in its absence may impair or impede CLI's ability to protect its interests.  CLI may be served by delivery of the summons and complaint to its registered agent for service of process, Ludger Huelsewiesche, 109 W. Mockingbird Lane, Statesboro, GA 30461.

14.     OCRK does not allege that CLI has committed any violation of law to date; rather, upon information and belief, if not joined in this action as a defendant CLI would seek to intervene in the action in order to protect its interests.  OCRK further alleges that CLI will both impair this Court's jurisdiction to hear this suit and violate the CWA if it harvests timber from Cypress Lake pursuant to the Corps' authorization.

## FEDERAL REGULATORY AND STATUTORY BACKGROUND

### Clean Water Act

15.     In 1972, Congress passed the Clean Water Act "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  To achieve this objective, Section 301 of the CWA prohibits "the discharge of any pollutant" into "the navigable waters of the United States" except in accordance with permits issued under the

CWA. 33 U.S.C. § 1311(a). "Pollutants" include dredged spoil, rock, and sand, among other materials. 33 U.S.C. § 1362(6).

16.     Section 404 of the CWA authorizes the Secretary of the Army to issue permits for the discharge of dredged or fill material into "navigable waters of the United States" when certain conditions are met. 33 U.S.C. § 1344. However, Section 404(f)(1) excludes the discharge of dredged or fill material from the CWA's permit requirement under certain circumstances. One of the exempted activities is the discharge of dredged or fill material from "normal farming, silviculture, and ranching activities such as plowing, seeding, cultivating, minor drainage, harvesting for the production of food, fiber, and forest products, or upland soil and water conservation practices." 33 U.S.C. § 1344(f)(1)(a).

17.     The Corps has issued regulations interpreting this so-called "farming and silviculture exemption." These regulations state that "the activities . . . must be part of an established (i.e., on-going) farming, silviculture, or ranching operation . . . ." to qualify for the exemption. 33 C.F.R. § 323.4(a)(1)(ii). *See also, Avoyelles Sportsmen's League v. Alexander,* 473 F. Supp. 525, 535 (W.D. La. 1979) (saying the word "normal" connotes an established and continuing activity); *United States v. Brace,* 41 F.3d 117, 129 (3rd Cir. 1994) (finding certain activities were not normal agriculture and thus not entitled to the exemption since they had not been effectively on-going).

18.     The CWA also provides circumstances in which the statute's jurisdiction covers activities that would otherwise fall within one of the exemptions. This provision, known as the "recapture provision," provides that any discharge of dredged or fill material into navigable waters that will bring the navigable waters "into a use to which it was not previously subject, where the flow or circulation of navigable waters may be impaired or the reach of such waters be

reduced, shall be required to have a permit." 33 U.S.C. § 1344(f)(2).  Thus, even if an activity

falls within the farming or silviculture exemption, it is "recaptured" within the jurisdiction of the

CWA and a permit is required if the activity brings the water into a use to which it was not

previously subject, and the flow or circulation of the waters will be impaired or its reach will be

reduced.

19.     The CWA charges the Corps with administering the CWA.  However, the CWA

also vests the United States Environmental Protection Agency ("EPA") with the authority and

responsibility for overseeing the Corps' administration of the CWA, including the Section 404

permitting process.

Administrative Procedure Act

20.     The Administrative Procedure Act ("APA") provides that "[a] person suffering

legal wrong because of agency action, or adversely affected or aggrieved by agency action

within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

21.     The APA provides that a court shall set aside agency "findings, conclusions, and

actions" that are "arbitrary, capricious, or an abuse of discretion or otherwise not in accordance

with law." 5 U.S.C. § 706(2)(A).

22.     The reviewing court must carefully "consider whether the decision was based on a

consideration of the relevant factors and whether there has been a clear error in judgment."

*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402 (1971).  While the court need not

substitute its judgment for that of the agency, it must nevertheless "make a substantial inquiry

into the factors considered by the agency." *Sierra Club v. Martin*, 992 F. Supp. 1448, 1466

(N.D. Ga. 1998), *rev'd on other grounds,* 168 F.3d 1 (11th Cir. 1999).

23.     The Corps is a federal agency subject to the APA.

## FACTS

### Cypress Lake

24.     Cypress Lake is a several hundred acre wooded lake located approximately 5 miles southwest of Statesboro, in Bulloch County, Georgia.  Cypress Lake was created approximately sixty years ago when Lotts Creek, a tributary to the Canoochee River, was impounded.

25.     Cypress Lake, including the area of the proposed timber harvest, is owned by the shareholders of Cypress Lake, Inc.  A number of additional individuals are not members of CLI but nonetheless have the legal right to access the lake.

26.     Cypress Lake contains both open water and forested areas.  The forested areas contain stands of swamp blackgum, water tupelo, and cypress trees.  This forested lake ecosystem provides valuable habitat and supports a diversity of plants, birds, mammals, reptiles, amphibians, fish and invertebrate species.  Individuals with access to the lake utilize it for hunting, fishing, paddling, and birdwatching.  Additionally, the Cypress Lake ecosystem serves important ecological functions such as providing storm protection, flood mitigation, and water retention and purification.  Harvesting the timber stands will negatively impact the ability of the Cypress Lake to support its existing level of species diversity, quality recreational opportunities, and ecological functions.

27.     The water level in Cypress Lake is maintained through the operation of a spillway structure and the water level is managed to ensure that Cypress Lake remains inundated throughout the year.  Within the past year, the lake's water level has been lowered, approximately 3 - 4 feet in the area of the proposed harvest, to accommodate repairs to the spillway structure and to facilitate the proposed timber harvest.  The repairs to the spillway

structure have been completed but, upon information and belief, the lake has been maintained at its lower level in anticipation of the timber harvest.  Upon information and belief, once the timber harvest is completed the water level will be raised and maintained at pre-harvest levels.

28.     Cypress Lake is a navigable water of the United States as defined by the CWA.

<u>The Proposed Timber Harvest</u>

29.     CLI seeks to harvest timber from approximately 60 acres of the lake.  The timber in the proposed harvest area is primarily water tupelo and swamp blackgum with some cypress.

30.     Upon information and belief, CLI has arranged for this timber harvest through a number of agents, including Land Management Group and Yeomans Wood and Timber.

31.     On June 26, 2006, Yeomans submitted a letter to Land Management Group describing the method planned for harvesting the timber (the "Harvest Plan").  A true and accurate copy of the Harvest Plan is attached hereto as Exhibit 2.  According to the Harvest Plan, the timber will be cut and laid to form "mats" throughout the timber stand.  Tractors and other mechanized heavy equipment will travel over these mats as they cut and remove the timber from the remainder of the stand.  According to the Harvest Plan, the timber under the mats will be cut flush with the forest floor but the timber between the mats will be cut above the waterline.  The Harvest Plan anticipates that the timber mats will need to cross at least one stream.  A bridge will be constructed over this stream by placing a large pipe in the stream, and a skid will be used to remove harvested timber from the vicinity of the stream crossing.  A similar method will be used if any additional stream crossings are required.

32.     Among other activities, creating mats on the lake floor out of the trunks of harvested trees, operating large mechanized vehicles over these mats, and placing pipes in the stream for the construction of bridge(s) will displace, alter and change the contours of the lake

bed.  These activities will also result in the discharge, displacement and/or redeposition of fill

material into the lake.  Changing the contours of the lakebed is likely to alter, impair and reduce

the flow or circulation of water in Cypress Lake.

33.    On September 20, 2006, the Georgia Forestry Commission sent a letter to the

Corps and attached a Forest Management Plan prepared by Land Management Group.  A true

and accurate copy of the Georgia Forestry Commission letter and Forest Management Plan are

attached hereto as Exhibits 3 and 4.

34.    The Georgia Forestry Commission letter states that two measures will be taken to

address the regeneration and ongoing forestry concerns.  First, the letter states that the timber

will be harvested "approximately one foot above the high water mark."  Second, the letter states

that "the water level will be kept down until natural regeneration is twelve inches above the

normal high water level."  The Georgia Forestry Commission letter concludes that if those two

measures are implemented, the harvested trees "will regenerate naturally by seed and coppice

from stump sprouts."

35.    Keeping the water level down to facilitate the natural regeneration of the

harvested trees from seed will impair the flow of navigable waters in Cypress Lake, and will

reduce the reach of such waters in Cypress Lake.

36.    Contrary to the letter's description of the Plan, the Forest Management Plan does

not require that the water level in the lake be kept down to facilitate natural seed regeneration.  In

fact, the Forest Management Plan makes no mention of water level management whatsoever.

<u>The Corps Decisions</u>

37.    By letter to Land Management Group dated October 25, 2006, the Corps made its

final decision (the "Exemption Determination") that the proposed timber harvest was exempt

from CWA regulation as an on-going silviculture operation under 33 CFR § 323.4(a)(1).  A true and accurate copy of the Exemption Determination is attached hereto as Exhibit 5.

38.     The Exemption Determination states that "it is the opinion of the Georgia Forestry Commission that if harvesting is conducted in accordance with the [Forest Management Plan], natural regeneration of the site through stump-sprouting **should occur**."  (Emphasis added).

39.     The Exemption Determination states that the Corps reviewed "all available information and after further coordination with Georgia Forestry Commission . . . . determined that this proposed harvesting operation would be normal on-going silviculture and would not be subject to regulation under Section 404 of the Clean Water Act. (33 of the Code of Federal Regulations Part 323.4(a)(1))."

40.     The Exemption Determination makes no mention of the water level requirement relied upon by the Georgia Forestry Commission's letter and omitted from the Forest Management Plan.

41.     OCRK, through its counsel, was provided with a copy of the Georgia Forest Commission Letter and the Forest Management Plan at the same time it was informed of the Exemption Determination.

Science of Timber Regeneration

42.     Forestry research has shown that the success of harvested timber regenerating from stump sprouts varies widely.  Further, even if trees do produce stump sprouts in the years immediately following a cut, many of these sprouts fail in the subsequent years.  This phenomenon leads to frequent overestimation of the success of stump sprouting in regenerating harvested trees.  Stump sprouting alone cannot be relied upon as a reliable source of regeneration for cypress, blackgum and water tupelo trees.

43.     Cypress, blackgum and water tupelo trees can successfully regenerate from seed. However, successful seed regeneration requires favorable conditions, such as a good seed crop at the time of harvest, abundant overhead light, and little competition from other species.  More importantly, the seeds require ground that is damp but not inundated with water to grow.  The seedlings will not survive unless some of their foliage remains above water when the lake level is raised.

44.     Trees regenerating from seed generally grow 8 - 14 inches in the first year and 16 - 24 inches in subsequent years.  If the high water mark is approximately 36 - 48 inches high on the trees, therefore the seedlings would have to be 3 - 4 years old before they were 12 inches above the high water mark.

The Buratt Letter

45.     Acting in its oversight capacity under the CWA, EPA sent a letter to the New Orleans District of the Corps on June 6, 2006 advising the Corps of the proper scope of the silviculture exemption as it relates to the harvest of trees from a forested wetland.  This letter concerned a timber harvest proposal submitted by Mr. Steve Buratt and involved a forested wetland similar to Cypress Lake.  A true and accurate copy of the Buratt Letter is attached hereto as Exhibit 6.

46.     In the Buratt Letter, EPA advised the Corps that a "silviculture operation is ongoing, in these circumstances, when there is a **reasonable assurance** that a cypress-dominated forest will be re-established in harvested areas." (Emphasis added).

47.     EPA further advised the Corps that, in order to qualify for the silviculture exemption, the proposed Buratt timber harvest must include: "Actions to provide reasonable

11

assurance that cypress-dominated conditions will be re-established in harvested areas, e.g., by providing for replanting in areas where inundation restricts regeneration over time."

48.     The Buratt Letter is EPA's official agency interpretation of the scope of the silviculture exemption under 33 U.S.C. § 1344(f)(1)(a), and is entitled to deference by this Court.

## CLAIMS FOR RELIEF

### Count I
### (Improper Application of the On-going Silviculture Exemption)

49.     OCRK incorporates by reference the allegations of paragraphs 1 - 48 as if restated here in full.

50.     The Exemption Determination issued by the Corps on October 25, 2006 concluded that the natural regeneration of the trees in the harvested area "should occur."  The Corps therefore determined that the proposed timber harvest was exempt from the Clean Water Act under the ongoing silviculture exemption.  The Exemption Determination is a final agency action subject to review under the APA.  33 C.F.R. 320.1(a)(6).

51.     Cypress Lake is a "navigable water" subject to the CWA.  The proposed harvest of timber from Cypress Lake will result in the discharge, displacement and/or redeposition of fill into that navigable water.

52.     Stump regeneration is an unreliable method of timber regeneration, and seed regeneration is unlikely to be successful unless water levels are kept low to prevent the seedlings from being submerged.  Without requirements to ensure the success of seed regeneration, there is no reasonable assurance that the harvested timber will regenerate.  Because the harvested timber is not likely to regenerate, the harvesting of trees from Cypress Lake is not an ongoing silviculture activity.

53.    The Exemption Determination relies on the Georgia Forestry Commission's conclusion that natural regeneration of the harvested trees "should occur."  The Georgia Forestry Commission's conclusion is based on the assumption that the Forest Management Plan requires "the water level be kept down until natural regeneration is twelve inches above the normal high water level."

54.    The Forest Management Plan does not contain a requirement that the water level be kept down to ensure successful regeneration from seed.  Indeed, absent Corps jurisdiction over the harvesting operation, the Corps cannot assure that any necessary conditions for regeneration will be met.

55.    It was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law for the Corps to exempt the proposed timber harvest under Section 404(f)(1)(A) of the Clean Water Act.

### Count II
### (Failure to Require Sufficient Assurance of Timber Regeneration)

56.    OCRK incorporates by reference the allegations of paragraphs 1 - 55 as if restated here in full.

57.    Cypress Lake is a "navigable water" subject to the CWA, and the harvest of timber from Cypress Lake will result in the discharge, displacement and/or redeposition of fill into that navigable water.

58.    EPA has interpreted 33 U.S.C. § 1344(f)(1)(a) to require "reasonable assurance" that the harvested trees will regenerate in order for the timber harvest to be exempt from the CWA under the silviculture exemption.

59.     In the Exemption Determination, the Corps concluded that regeneration through stump-sprouting "should occur."  The Corps has not determined that the Forest Management Plan contains "reasonable assurance" that regeneration of the trees will occur.

60.     In fact, the Forest Management Plan and the Exemption Determination lack reasonable assurance that regeneration will occur.

61.     The Corps' use of the incorrect legal standard to determine the timber harvest's likelihood of regeneration was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

## Count III
### (Failure to Apply the Recapture Provision)

62.     OCRK incorporates by reference the allegations of paragraphs 1 - 61 as if restated here in full.

63.     Cypress Lake is a "navigable water" subject to the CWA, and the harvest of timber from Cypress Lake will result in the discharge, displacement and/or redeposition of fill into that navigable water.

64.     Natural regeneration of the proposed timber harvest will require that the water level in Cypress Lake be kept down if not empty altogether for several years to facilitate seed regeneration in the harvested areas.  Keeping the lake level down or empty altogether for several years will bring the lake into a use to which it was not previously subject.

65.     The proposed timber harvest will alter, impair and reduce the flow or circulation of water in Cypress Lake.  Keeping the lake level down or empty altogether for several years to facilitate seed regeneration will substantially reduce the size of the lake, and alter, impair and reduce the flow and circulation of its water.

66.     The Exemption Determination unlawfully fails to exercise jurisdiction over the proposed timber harvest under the CWA's recapture provision, irrespective of whether the activity would otherwise qualify for the silviculture exemption.  The Corps' failure to apply the recapture provision of the CWA was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law.

## **PRAYER FOR RELIEF**

Wherefore, the OCRK respectfully requests that the Court grant the following relief:

1.     Enter a declaratory judgment stating that the Exemption Determination, issued by the Savannah District of the Army Corps of Engineers to Cypress Lake, Inc. on October 25, 2006, was unlawfully issued in violation of the CWA;

2.     Issue an injunction prohibiting Cypress Lake, Inc. from discharging or displacing any dredged or fill material, including through the harvest of timber, into Cypress Lake until a valid permit under the CWA is issued, and from authorizing any of its agents to undertake such actions;

3.     Award Plaintiff all costs and expenses of this action, including attorneys fees; and

4.     Award such additional relief the Court deems proper.

This 9th day of November, 2006.

SMITH, GAMBRELL & RUSSELL,

Stephen E. O'Day _with express permission by Asbill_

Stephen E. O'Day
Georgia Bar No. 549337
Smith, Gambrell & Russell
Promenade II, Suite 3100
1230 Peachtree Street N.E.
Atlanta, GA 30309
404-815-3500

TURNER ENVIRONMENTAL LAW CLINIC,

Mary Maclean Asbill
Georgia Bar No. 225815
Turner Environmental Law Clinic
Emory University School of Law
1301 Clifton Road
Atlanta, Georgia 30322
(404) 727-3432

Counsel for Plaintiff Ogeechee-Canoochee Riverkeeper

OF COUNSEL:

Brian L. Gist
Ohio Bar No. 0075667
Southern Environmental Law Center
127 Peachtree Street, Suite 605
Atlanta, Georgia  30303
(404) 521-9900

16

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| OGEECHEE-CANOOCHEE<br>RIVERKEEPER, INC.; | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. _____ |
| U.S. ARMY CORPS OF ENGINEERS; LT.<br>GENERAL CARL A. STROCK, U.S. Army<br>Corps of Engineers; COLONEL MARK S.<br>HELD, U.S. Army Corps of Engineers,<br>Savannah District; MIRIAN MAGWOOD,<br>U.S. Army Corps of Engineers, Savannah<br>District; and CYPRESS LAKE, INC; | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF INTERESTED PERSONS
### S.D. Ga. LR 3.2

The undersigned, counsel of record for Plaintiff Ogeechee-Canoochee

Riverkeeper, certifies that the following is a full and complete list of the parties in this

action:

**Ogeechee-Canoochee Riverkeeper, Plaintiff**

**United States Army Corps of Engineers, Defendant**

**Lt. General Carl A. Strock, in his official capacity, Defendant**

**Colonel Mark S. Held, in his official capacity, Defendant**

**Mirian Magwood, in her official capacity, Defendant**

**Cypress Lake, Inc., Defendant**

The undersigned further certifies that the following is the known full and

complete list of officers, directors, or trustees of the above-identified parties:

**EXHIBIT 1**

**Ogeechee-Canoochee Riverkeeper**

**Executive Staff:**

Chandra Brown, Executive Director

**Board of Directors:**

Donald D.J. Stack, Esq., Chairman
John Lewis, P.E., Vice-Chair
Mary Elanor Wichersham, Secretary
Dianna Wedincamp, Treasurer
James C. Abbot, Director
Mary F. Andrew, Director
Thomas Black, Director
Geary Davis, Director
Bill Easterlin, Director
Tim Goodson, Director
Larry Hodges, Director
Curtis Hunter, Director
James Newsome, Director
Phil Odom, Director
James Reichard, Director
Linda Smith, Director
Billy Veal, Director
Stephen Vives, Director
Julian S. Wade, Director

The undersigned further certifies that the following is the known full and complete list of other persons, firms, partnerships, corporations, or organizations that have a financial interest in, or another interest which could be substantially affected by, the outcome of this case (including a relationship as a parent or holding company or similar relationship):

**Attorneys for Cypress Lake, Inc.:**

Attorney for Cypress Lake, Inc. is not known at this time.

**Parent and Percentage of Ownership of Cypress Lake, Inc.:**

Ludger Huelsewiesche is the registered agent for Cypress Lake, Inc. Cypress Lake, Inc.'s CEO is Bucky Wagner, its CFO is Henry Doyle, and Cathy Dixon is its Secretary. The individual shareholders of Cypress Lake, Inc. are not known at this time.

**Attorneys for Plaintiff Ogeechee-Canoochee Riverkeeper:**

Mary Maclean D. Asbill, Turner Environmental Law Clinic
Stephen E. O'Day, Smith, Gambrell & Russell
Brian L. Gist, Southern Environmental Law Center (Of Counsel)

So certified, this the ___9th___ day of November, 2006.

SMITH, GAMBRELL & RUSSELL,

_Stephen E. O'Day_   with express
Stephen E. O'Day                 permission by
Georgia Bar No. 549337           MMA
Smith, Gambrell & Russell
Promenade II, Suite 3100
1230 Peachtree Street N.E.
Atlanta, GA 30309
404-815-3500


TURNER ENVIRONMENTAL LAW CLINIC,


_Mary Maclean Asbill_
Mary Maclean Asbill
Georgia Bar No. 225815
Turner Environmental Law Clinic
Emory University School of Law
1301 Clifton Road
Atlanta, Georgia 30322
(404) 727-3432
Counsel for Plaintiff Ogeechee-Canoochee
Riverkeeper


OF COUNSEL:

Brian L. Gist
Ohio Bar No. 0075667
Southern Environmental Law Center
127 Peachtree Street, Suite 605
Atlanta, Georgia 30303
(404) 521-9900



**YEOMANS WOOD & TIMBER**

Land Mgt. Group                                                June 26, 2006
P.O. Box 10
Brooklet, GA  30415

**Subject:** Proposed harvest; Cypress Lake

Dear Sirs,

Thank you for the opportunity to submit a harvest plan/proposal for the harvest job on
Cypress Lake, located in Bulloch County, GA.  Per our previous conversations, we
realize the sensitivity of this job and assure you that we will do everything in our power
to ensure that all aspects of the harvesting job will be handled in accordance with
guidelines set forth by the GA Forestry Commission.  If accepted, the tract will be
harvested by a logger trained in the Master Timber Harvester program, as required by the
SFI Implementation Committee.  This job will also be conducted by a hardwood tract/low
ground pressure crew because of the sensitivity of the site.

Please refer to the enclosed map for explanation of the harvest plan.  In order to harvest
this tract in an environmentally safe way, we will be using log mats.  These mats will be
cut and laid about 12 to 15 ft in width, and placed strategically throughout the stand.
There will be 34 to 36 ft of timber/regeneration between all mats that will be harvested
from these mats.  The timber between the mats will be cut above the waterline, to ensure
that regeneration will take place in these areas.  The timber in the mats will be cut flush
with the forest floor so that the wood can lie evenly to bridge the ground from the
equipment.  All tractors and equipment will use these mats as travel ways to keep from
directly impacting the soils.

This job will require at least one stream crossing. We will place one large pipe (size to be
determined by GFC) in the stream run and bridge over the top with large, sound timber to
ensure that no soil has to be disturbed with building this temporary crossing.  We will
skid across this one place and remove it as soon as harvest is complete.  If a second
crossing is required, we will perform the exact same procedure as described earlier.  Only
one stream crossing will be active at a time.

714 EMPIRE EXPRESSWAY ~ P.O. BOX 658 ~ SWAINSBORO, GA  30401
PHONE: (478) 237-9940 ~ FAX: (478) 237-5098 ~ www.yeomanswood.com

**EXHIBIT 2**

We can harvest this tract from three logging decks. We will locate these decks on the upland area outside of the cutting boundary. This will limit equipment activity inside of the harvest area. We estimate this harvest to take ten to fifteen working days.

All of our planned activity is delineated on the attached map. Please see that each "mat line" represents multiple mats for a particular area. Again, mats will be placed at optimal distances apart. If plans deviate from this in any way other than slightly, we will contact you or GFC prior to harvest. Understand that the drawings on the map are close references and not exact locations.

Respectfully submitted,

Russ Yeomans
Yeomans Wood and Timber, Inc.

SEP-20-2006  14:55        GA FORESTRY COMMISSION              478 751 3465   P.01/01



**GEORGIA FORESTRY COMMISSION**

P.O. Box 819
Macon, GA 31202-0819
P. 478-751-3500
F. 478-751-3465

An Equal Opportunity
Employer & Service Provider



Sonny Perdue
Governor

Robert C. Stewart, Jr.
Director

Board of Commissioners:

Jim L. Gillis, Jr. Chairman
Soperton

Victor Beadles
Moultrie

Wesley Langdale
Valdosta

H. G. Thomas New
Louisville

Robert Pollard
Appling

Fred Warnell, Jr.
Richmond Hill

J. G. Yarbrough
Swainsboro

September 20, 2006

Mr. Jason O'Kane
US Army Corps of Engineers
P.O. Box 889
Savannah, Ga 31402-0889

Dear Jason,

This letter is in reference to the proposed harvest plan dated June 29th, 2006 for Cypress Lake, Inc. prepared by the Land Management Group for the headwaters of Cypress Lake in Bulloch County. The Georgia Forestry Commission (GFC) has met on site with representatives of the landowner, the forestry consultant, and the timber buyer to discuss recommended BMPs for the operation.

Based on our discussions and the proposed harvest plan, the GFC feels that the recommended BMPs are adequately addressed and if implemented accordingly should result in no water quality or wetland impairments.

In order to address the concern of regeneration and ongoing forestry, the revised plan states that the timber will be harvested approximately one foot above the high water mark and that the water level will be kept down until natural regeneration is twelve inches above the normal high water level. According to available literature and recent field observations in Louisiana and Florida, gum and cypress trees will regenerate naturally by seed and coppice from stump sprouts. By keeping the water level down, until such time this expected seed and coppice regeneration is twelve inches above the normal high water level, should be sufficient to meet the ongoing forestry definition and exemption.

If you need additional information, please advise.

Regards,

Frank Green

Cc Rick Hatten, Chief of Forest Management
   Willard Fell, Statesboro District Forester
   Jimmy Lanier, Land Management Group

**EXHIBIT 3**

TOTAL P.01



**Land Management Group**

foresters • appraisers • realtors

www.landmanagementgroup.us

A Division of LAND RESOURCES, INC.

June 29, 2006

Mr. Jason O'Kane

U S Army Corp of Engineers

P. O. Box 889

Savannah, Georgia 31402-0889

RE: # 200501029

Dear Mr. O'Kane,

Land Management Group, as agent for Cypress Lake, Inc. propose the following sale of timber on a portion of heavily wooded hardwood timber located near the headwaters of Cypress Lake in Bulloch County, Georgia near Statesboro. This proposed timber sale is to generate funds to repair the spillway at Cypress Lake Road. The timber sale will be approximately 60 acres in size (see attached map) and volumes harvested will include primarily hardwood pulpwood 60%, Cypress mulch 24%, Black Gum Saw Timber 10%, and Cypress Saw Timber 6%.

Land Management Group has met on site with the Georgia Forestry Commission State Water Quality Coordinators. We have set up the sale of

RECEIVED

SEP 2 6 2006

BY: CESAS-RD ___

**EXHIBIT 4**

timber in accordance with the State Best Management Practices (Georgia's Best Management Practices, 1999) based on their recommendations for Stream Side Management Zones.

The timber will be harvested approximately one foot above the high water mark, as per Georgia Forestry Commission, to insure regeneration via coppice stump sprout for a future stand (The Practice of Silviculture, 1962). The Georgia Forestry Commission will monitor the site after harvesting to document regeneration.

Land Management Group formally submits this plan in accordance with on-going silvicultural practices for timber harvest on behalf of the owners of Cypress Lake, Inc.

Respectfully submitted,

H. Alan Lamb, R.F.

James B. Lanier, R.F.

References

Georgia Forestry Commission (1999) Georgia's Best Management Practices, 1999. Statesboro, Georgia, GFC District 10 Office

Smith, David Martyn (1962) The Practice of Silviculture. John Wiley & Sons, Inc., New York, London, Sydney



**DEPARTMENT OF THE ARMY**
SAVANNAH DISTRICT, CORPS OF ENGINEERS
P.O. BOX 889
SAVANNAH, GEORGIA 31402-0889

October 25, 2006

Regulatory Division
200501029

Land Management Group
Attention: Jimmy Lanier
Post Office Box 10
Brooklet, Georgia 30415

Dear Mr. Lanier:

I refer to the Forest Management Plan dated June 29, 2006, that you submitted on behalf of the owners of Cypress Lake, a man made reservoir located five miles southwest of Statesboro, Bulloch County, Georgia. This plan concerns the harvesting of timber from approximately 60 acres of the lake. Work in waters of the United States associated with this silvicultural operation would include the construction of temporary stream crossings and timber haul roads.

By letter dated September 20, 2006, the Georgia Forestry Commission confirmed that the subject Forest Management Plan was developed with their assistance and meets Georgia's Best Management Practices for Forestry. Under this plan, trees harvested from Cypress Lake would be cut approximately one foot above the high water mark. It is the opinion of the Georgia Forestry Commission that if harvesting is conducted in accordance with this plan, natural regeneration of the site through stump-sprouting should occur. After harvesting, the Georgia Forestry Commission will periodically inspect the site to monitor regeneration.

Based on our review of all available information and after further coordination with the Georgia Forestry Commission, we have determined that this proposed harvesting operation would be normal on-going silviculture and would not be subject to regulation under Section 404 of the Clean Water Act (33 of the Code of Federal Regulations Part 323.4(a)(1)). As you are also aware, we have determined that Cypress Lake is not subject to jurisdiction under Section 10 of the Rivers and Harbors Act.

This communication does not convey any property rights, either in real estate or material, or any exclusive privileges. It does not authorize any injury to property or invasion of rights, or any infringement of federal, state, local laws or regulations. It does not obviate the requirement to obtain state or local assent required by law for the activity described herein. It does not affect your liability for damages that may be caused by the work, nor does it authorize any interference with any existing or proposed federal project.

**EXHIBIT 5**

2

If changes to the Forest Management Plan are contemplated, it would be necessary for you to contact this office for reconsideration of this determination. If the information you submitted, and on which the US Army Corps of Engineers based its determination is later found to be in error, this decision may be revoked.

Thank you for your cooperation in this matter and if you have any questions, please call Jason O'Kane, Project Manager, at (912) 652-5349.

Sincerely,

Mirian J. Magwood
Chief, Regulatory Division

Copies Furnished:

US Environmental Protection Agency,
Region IV, Wetlands Protection Section
Attention: Mr. Tom Welborn
61 Forsyth Street, Southwest
Atlanta, Georgia 30303-3104

Georgia Forestry Commission
Attention: Frank Green
Post Office Box 819
Macon, Georgia 31202-0619

Southern Environmental Law Center
Attention: Christopher K. DeScherer
The Candler Building
127 Peachtree Street, Suite 605
Atlanta, Georgia 30303-1800



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 6
1445 ROSS AVENUE, SUITE 1200
DALLAS, TX 75202-2733

JUN - 6 2006

Colonel Richard P. Wagenaar
New Orleans District
U.S. Army Corps of Engineers
P.O. Box 60267
New Orleans, LA 70160-0267

Dear Colonel Wagenaar:

This letter responds to your requests, dated February 9 and July 8, 2005, for the Environmental Protection Agency's (EPA) input on whether or not a 200-acre cypress logging operation proposed by Mr. Steve Buratt is subject to exemptions for normal silviculture activities and forest roads pursuant to Clean Water Act (CWA) Sections 404(f)(1)(A) and (E). We have discussed this matter with a wide range of interests, inspected the proposed logging site twice, and reviewed Mr. Buratt's revised Forest Stewardship Management Plan (FSMP), that EPA received on January 19, 2006. We have examined Mr. Buratt's site and proposal in the context of the information found in the Science Working Group's April 30, 2005, Final Report on Coastal Wetlands Forest Conservation and Use.

We have reviewed the FSMP for the proposed operation consistent with the exemption at 404(f)(1)(A), which requires that the activity be part of an established or ongoing silvicultural operation. A silvicultural operation is ongoing, in these circumstances, when there is a reasonable assurance that a cypress-dominated forest will be re-established in harvested areas.[1] This is a particularly important consideration in logging operations in coastal Louisiana where natural regeneration of cypress may be severely limited by environmental conditions.

The FSMP indicates 200 acres of cypress swamp would be logged utilizing various strip thinning methods. Strips of trees ranging from approximately 200-400 feet wide would be cut, leaving smaller sections of seed trees for natural regeneration. In some parts of the proposed logging site, natural regeneration may be possible, but in others we expect that the likelihood of prolonged inundation will necessitate more active management measures to reasonably assure that cypress regeneration will successfully occur on the site. The FSMP does offer a small section on which the State would be allowed to replant "for study purposes" at State expense. This measure does not provide reasonable assurance that regeneration will occur. Moreover, it is uncertain whether the State will in fact conduct replanting at its own expense.

Based on our review of Mr. Buratt's FSMP and site conditions, the FSMP should include the following elements in order to qualify for an exemption pursuant to section 404(f)(1)(A):

---

[1] "Silviculture" is commonly understood to be the science of controlling the establishment, growth, composition, health, and quality of forests and woodlands to meet the diverse needs and values of landowners and society "on a *sustainable* basis." Society of American Foresters, Dictionary of Forestry (emphasis added).

Internet Address (URL) • http://www.epa.gov
Recycled/Recyclable • Printed with Vegetable Oil Based Inks on Recycled Paper (Minimum 25% Postconsumer)

**EXHIBIT 6**

- Actions to provide reasonable assurance that cypress-dominated forest conditions will be re-established in harvested areas, e.g., by providing for replanting in areas where inundation restricts regeneration over time;

- Implementation of management measures, as necessary, for the effective regeneration of cypress, namely control of herbivores, such as nutria, and invasive species (Chinese tallow, for example), that are a common concern in coastal Louisiana.

We understand that all logging methods proposed in the FSMP would entail the use of mat-type logging roads to facilitate access and the removal of cut timber from the site. Such mat-type roads are built by stacking cut trees side-by-side to provide a platform upon which logging equipment such as cutters, loaders, and skidders can enter the swamp, cut and remove trees. In logging operations in similar areas in coastal Louisiana, we understand that cut trees have been stacked two to three layers deep or possibly even deeper to build a functional mat-type road. Mat-type roads are intended to be temporary, and the logs used to build these roads are removed to the extent possible after the area accessed by the road has been logged.

In order for the mat-type logging roads to qualify for the exemption under section 404(f)(1)(E), they must be constructed and maintained in accordance with forest road Best Management Practices (BMPs) found at 40 CFR 232.3(c)(6)(i-xv). Specifically, the FSMP should include the following:

- Description of how the proposed mat-type logging roads will not exceed the minimum feasible number, width, and total length necessary, consistent with the purpose of this operation and site conditions;

- Information on how the roads will be designed in a manner that avoids disruption of aquatic life movement and restriction of expected flood flows;

- Description of how the area will be restored to its original elevation after completion of logging and removal of the roads.

It should be noted, however, that it may be difficult to develop adequate management measures in these circumstances. Because the site is regularly inundated, it is subject to extensive and long-term soil damage and hydrologic alteration, making effective restoration of the site extremely difficult.

For the exemption to apply, the FSMP would need to be revised to address each of the recommendations included in this letter. Incorporation of these management measures into the design and operation of Mr. Buratt's management plan are necessary if the CWA exemptions for normal silviculture activities and forest roads are to apply. Alternatively, Mr. Buratt may pursue CWA Section 404 authorization as part of his pending Section 10 permit application.

Thank you for the opportunity to provide comments regarding the applicability of CWA exemptions to the logging operation proposed by Mr. Buratt. We remain eager to work

collaboratively with you, Mr. Buratt, and other stakeholders in the review of this important matter. If you have any questions or wish to discuss this issue further, please feel free to contact me or your staff may call John Ettinger, of my staff, at (504) 862-1119.

Sincerely,

Miguel I. Flores
Director
Water Quality Protection Division

cc:     LDAF, Baton Rouge, LA
        LDEQ, Baton Rouge, LA
        LDNR, Baton Rouge, LA
        LDWF, Baton Rouge, LA
        NOAA Fisheries, Baton Rouge, LA
        USFWS, Lafayette, LA