

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

OGEECHEE-CANOOCHEE RIVERKEEPER, INC.,

Plaintiff,

v.     606CV102

UNITED STATES ARMY CORPS OF
ENGINEERS; LT. GENERAL CARL A. STROCK,
United States Army Corps of Engineers; COLONEL
MARK S. HELD, United States Army Corps of
Engineers, Savannah District; MIRIAN
MAGWOOD, United States Army Corps of
Engineers, Savannah District,

Defendants.

## ORDER

## I. INTRODUCTION

Ogeechee-Canoochee Riverkeeper, Inc. ("Riverkeeper") brought this Administrative Procedure Act ("APA") claim against the U.S. Army Corps of Engineers, and various Corps officers in their official capacities (collectively, the "Corps").[1] Doc. # 1; 5 U.S.C. §§ 701-706 (APA judicial review section). Riverkeeper challenges a Corps decision to exempt a proposed timber harvest from Clean Water Act ("CWA") regulation as "arbitrary, capricious, or an abuse of discretion or otherwise not in accordance with the law." Doc. # 1 at 6, 12-15 (citing 5 U.S.C. § 706(2)(A) (relevant APA provision)); 33 U.S.C. §§ 1251-1387 (CWA). The Corps moves the Court to dismiss this case for lack of subject matter jurisdiction.

## II. BACKGROUND

Cypress Lake is a several-hundred acre, man-made, wooded lake created sixty years ago in Bulloch County, Georgia. Doc. # 1 at 7.[2] Cypress Lake, Inc. ("CLI"), the private company that owns the lake, sought to harvest timber from 60 of the lake's acres. *Id.* at 7-8. On 10/25/06, the Corps made an "Exemption Determination" that the harvest proposed in CLI's submitted "Forest Management Plan" was exempt from CWA regulation; "this proposed harvesting operation would be normal on-going silviculture[3] and would not be subject to regulation under Section 404 of the Clean Water Act (33 of the Code of Federal Regulations Part 323.4(a)(1))." *Id.*, exh. 5 (footnote added).

Riverkeeper then brought this suit, contesting the Corps's Exemption Determination. Riverkeeper asserts that the decision constituted an arbitrary and capricious application of the "on-going silviculture" exemption from CWA compliance. *Id.* at 12-14. Even if the silviculture exemption applies, Riverkeeper asserts that the Corps arbitrarily and capriciously failed to apply the CWA's "recapture" provision, which prevents

> [a]ny discharge of dredged or fill material into the navigable waters

---

[1] A private-company defendant, Cypress Lake, Inc., was dismissed after settlement. Doc. # 18.

[2] On dismissal motions, the Court accepts the allegations in the Complaint as true and construes them in the light most favorable to the plaintiff. *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1262 (11th Cir. 2004). The following facts are derived from Riverkeeper's Complaint and, for this Order only, are accepted as true.

[3] "[S]ilviculture is the art and science of sustainably growing trees to meet needs." http://www.fs.fed.us/r8/boone/resources/silvics/index.shtml (site as of 5/7/07).

incidental to any activity having as its purpose bringing an area of the navigable waters into a use to which it was not previously subject, where the flow or circulation of navigable waters may be impaired or the reach of such waters be reduced, shall be required to have a permit under this section.

33 U.S.C. § 1344(f)(2).

Subsequently, CLI temporarily abandoned its plan to harvest the 60 acres at issue, and Riverkeeper agreed to dismiss CLI as a defendant. Doc. ## 17-18. The settlement agreement provided that "[CLI] no longer intends to *presently* pursue the proposed timber harvested [sic] outlined in its request to the Corps ... the Corps has advised [CLI] that the [Exemption Determination] is no longer valid." Doc. # 17 at 2. The Corps now argues that the case is moot, and thus the Court lacks subject matter jurisdiction. doc. # 19.

III. ANALYSIS

"It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' For that reason, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." *Church of Scientology of Cal. v. U.S.*, 506 U.S. 9, 12 (1992) (cites omitted) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). The Corps argues that CLI's decision to forego the harvest at this time, coupled with its own withdrawal of the decision exempting CLI's proposed harvest from the CWA permit process, renders this case moot because the Court cannot grant any effectual relief whatever to Riverkeeper, even if it succeeded on the merits.

Initially, the Court agrees with the Corps. Riverkeeper asks for (1) "a declaratory judgment stating that the Exemption Determination ... was unlawfully issued in violation of the CWA"; and (2) "an injunction prohibiting [CLI] from [harvesting the timber] until a valid permit under the CWA is issued." Doc. # 1 at 15. As to the former, the Corps retracted its position in the Exemption Determination, so a judicial declaration that the position was unlawful would have no effect. As to the latter, CLI is no longer a party to this suit. Even were CLI still a party, it decided to forego harvesting timber from Cypress Lake at this time and agreed to revisit the permitting issue with the Corps if it ever changes its mind. Thus, this Court is now being asked to enjoin a course of action that CLI has no present intention of pursuing.[4]

This case therefore is moot unless a mootness exception applies. Riverkeeper cites four, contending that: (1) "the challenged Corps decision continues to be applied yet evades review"; (2) the "voluntary cessation" exception to the mootness doctrine applies; (3) the merits of the claim are "intrinsically intertwined with the facts necessary to establish subject matter jurisdiction"; and (4) additional discovery is warranted. Doc. # 20 at 2.

The Court need only discuss Riverkeeper's "voluntary cessation" argument. When a defendant voluntarily ceases activity challenged

---

[4] In an APA action the injunctive relief requested should be against the *government*, not the private actors. In a case like this, then, it ordinarily would be proper to move the Court for a positive injunction directing the Corps to retract an arbitrary and capricious opinion.

in a prospective-relief lawsuit, that lawsuit seemingly becomes moot;[5] the prospective relief would solve nothing because the challenged behavior already ceased.

Courts nevertheless retain power to hear voluntary-cessation cases because if voluntary cessation divested a court of power to hear a case, "courts would be compelled to leave the defendant free to return to his old ways." *U.S. v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968). In a voluntary-cessation situation, a case is moot only "if subsequent events ma[k]e it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.*

The party asserting mootness based on voluntarily-ceased behavior bears a "heavy burden of persuasion" on this issue. *Id.* Therefore, because mootness here was induced by the Corps's voluntary retraction of its Exemption Determination, the case can only be dismissed if the Corps satisfies its "heavy burden of persuasion" that it is "absolutely clear" that the Exemption Determination "could not reasonably be expected to recur." *Id.*

*Troiano v. Supervisor of Elections in Palm Beach*, 382 F.3d 1276 (11th Cir. 2004), set a different standard when the government is the party voluntarily ceasing challenged activity. The *Troiano* court held that "when the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur." *Id.* at 1283. Thus,

a challenge to a government policy that has been unambiguously terminated will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated. In the absence of any such evidence, there is simply no point in allowing the suit to continue and we lack to power to allow it to do so.

*Id.* at 1285. *Troiano*'s analysis shifts the burden from the government (to show it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Concentrated Phosphate*, 393 U.S. at 203) to the plaintiff to show "some reasonable basis to believe that the policy will be reinstated if the suit is terminated," *Troiano*, 382 F.3d at 1283.

That shift, however, directly contradicts *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216 (2000). There the plaintiff challenged the Federal Government's presumption that minority-owned businesses are socially disadvantaged, hence qualified for special treatment as "disadvantaged business enterprises," as an instance of racial discrimination (businesses not controlled by favored races could receive special treatment, but only by demonstrating social disadvantage). *Id.* at 218. After the district court struck down the presumption as unconstitutional, the Federal Government accepted the State of Colorado's determination that the plaintiff was a disadvantaged business enterprise. *Id.* at 221.

That concession led the court of appeals to vacate the district court's judgment by holding that the case was moot. The Federal Government had voluntarily ceased its challenged conduct (of discriminating against the plaintiff). By conceding that the plaintiff was a disadvantaged business enterprise, the

---

[5] A case containing a claim for retrospective relief, *e.g.* money damages, is not mooted by cessation of offending behavior because the Court can still grant relief for the legal wrong suffered.

3

plaintiff was now on the same footing as businesses controlled by minorities. Thus, that plaintiff could no longer demonstrate any injury. *Id.*

Reversing, the Supreme Court explained that the lower court

> confused mootness with standing, and as a result *placed the burden of proof on the wrong party*. If this case is moot, it is because the Federal Government has accepted [Colorado]'s certification of [plaintiff] as a disadvantaged business enterprise, and has thereby ceased its offending conduct. Voluntary cessation of challenged conduct moots a case, however, only if it is *absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur. And the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.
>
> ....
>
> Because, under the circumstances of this case, it is impossible to conclude that [the government defendants] have borne their burden of establishing that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," petitioner's cause of action remains alive.

*Id.* at 221-22 (quotes, cites, and alterations omitted) (first emphasis added). Given this Supreme Court precedent (placing upon the government the high burden of demonstrating with absolute clarity that its voluntarily-ceased behavior will not recur), this Court cannot apply *Troiano*'s government-favoring presumption. *See also Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1175 (11th Cir. 2006) (voluntary cessation case not citing *Troiano*; "the Forest Service [-- a government defendant --] has failed to carry its heavy burden to establish that Ouachita's claims are moot").

Here it is simply not "absolutely clear" that the Corps will not reinstate its Exemption Determination if this case is dismissed. In fact, a reasonable basis exists to believe that its determination will be reinstated in the future. CLI emphasized the word "presently" in its settlement agreement, doc. # 17 at 2 (CLI "no longer intends to *presently* pursue the proposed timber harvested [sic] outlined in its request to the Corps"), implying that it will, in the future, intend to pursue the same harvest. The Corps, though it voluntarily retracted the Exemption Determination because it was no longer necessary, presents no reason to believe it reassessed its allegedly arbitrary position, or that it would not simply point to the Exemption Determination the next time CLI comes calling.

The Corps argues that the Exemption Determination "was highly fact-specific and tied to an abandoned forest management plan. Unless and until a new plan is presented to the Federal Defendants, the facts upon which any future CWA decision would be based are unknown and speculative." Doc. # 19 at 10.

This argument fails for two reasons. First, the settlement agreement implies that CLI will pursue *the same harvest* at some point in the future, so the facts underlying the future Corps determination will likely be the same. Second, whatever the specifics of the particular harvest plan presented to the Corps in the future, the Exemption Determination was made without any fact-specific analysis. Doc. # 1, exh. 5 ("if

4

harvesting is conducted in accordance with [the Forest Management Plan], natural regeneration of the site through stump-sprouting should occur," thus "this proposed harvesting operation would be normal on-going silviculture and would not be subject to regulation under [the CWA]"). Without fact-specific analysis, it is not clear that different facts would lead to a different determination.

Because it is not absolutely clear that the voluntarily ceased Exemption Determination will not recur, and because in fact a reasonable basis exists to believe the Determination will recur, this case is not moot.

## IV. **CONCLUSION**

The motion to dismiss for lack of subject matter jurisdiction, filed by the United States Army Corps of Engineers, Lt. General Carl A Strock, Colonel Marks S. Held, and Mirian Magwood, is ***DENIED***. Doc. # 19.

This __7__ day of May, 2007.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA